WINDHAM,
*February,*
1843.

State
*v.*
Chandler &
Keyes.

---

STATE *v.* PEYTON R. CHANDLER, and ROLLIN G. KEYES.

The penalty for " dealing in the selling of foreign or domestic distilled spirituous liquors " may be incurred by a single act of selling without license.

The fact that the liquor is bought for medicine, does not exempt from the penalty.

The keeping and selling, by a retailer, of some of the articles used by apothecaries, does not constitute him an apothecary, but there must be combined therewith, skill in the preparation of medicines.

The supreme court can take no notice of a variance between the proof and an indictment, unless exceptions were taken, on trial, for that cause.

INDICTMENT for selling liquor without license. The indictment charged, that the respondents, on the 12th day of September, 1841, not having a license, &c., " did deal in the ' selling of domestic distilled spirituous liquors, in a less ' quantity, at one time, than twenty gallons, and did, then ' and there, sell, to one John Gray, one pint of alcohol, being ' domestic distilled spirituous liquor," &c.

Plea, not guilty.

On trial, the testimony for the state tended to prove, that the respondents were co-partners in trade, as merchants and apothecaries, and that John Gray, having a sick horse, and wishing to administer to him nitre and alcohol, called on the respondents, and so informed them, and purchased of them a quantity of nitre and a pint of alcohol, which were put into

WINDHAM,
*February,*
1843.

State
*v.*
Chandler &
Keyes.

the same bottle, by the respondents, and were delivered to, and carried away from the respondents' store by, said Gray. No testimony was produced by the respondents.

The respondents requested the court to charge the jury as follows :—

1. That the defendants must be shown to have sold spirituous liquors more than once, to subject them, as dealers, to the penalty.

2. If the spirituous liquor was bought in such a situation that it was not drinkable, the defendants are not liable to the penalty.

3. If the jury find the liquor was bought as a medicine, and used as such, the defendants are not liable to the penalty.

4. If the jury find that the salt petre was put with the spirits, before it was sold and delivered to the purchaser, and in such a quantity as to render it unfit for drinking; the defendants are not liable to the penalty.

5. That an apothecary has a right, without license, to mix spirituous liquors with his medicine, and sell the same, as well for the cure of sick, or diseased beasts, as human beings.

The court charged the jury that, if they believed the testimony, they should find the defendants guilty, — to which the respondents, after verdict of guilty, excepted.

*A. Keyes,* for respondents.

I. We complain that the county court refused to charge as requested. In construing statutes, it is a general rule, to look at the evil which the statute is intended to remedy. The evil in contemplation of the framers of the law, on which the indictment, in this case, was founded, is tippling shops and intemperance.

The object of the legislature was to restrain the evil, by confining the sale to a few, whose standing in society would be likely to check, rather than foster, the growth of intemperance. Hence, the selling of medicine compounded of spirituous liquors and other ingredients, which could only be used as an outward application, is not within the evil the statute intended to remedy. The legislature have put this construction upon the statute, by the exception made in favor

of apothecaries using spirituous liquors in compounding medicines, for sick and diseased persons. R. S. p. 401, §28. It is true, that the word *only* is used in the statute after the word *persons* ; but it is not used, nor intended, as an absolute negative that the apothecary should compound medicine with alcohol, in any other case, but only that they should not compound alcohol and other ingredients, for any other persons to take, but sick and diseased persons.

If the using of alcohol, compounded with medicines for sick persons, is not within the evil contemplated by the statute, the using of alcohol and nitre, compounded for beasts, is equally not within it. Such use fairly comes within the reason of the exception.

II. We think the charge was wrong in this, that the court charged the jury, if they *believed the testimony,* to bring the defendants in guilty. There was evidently a variance between the allegation and the proof. The allegation is, that the *defendants sold a pint of alcohol, being domestic distilled spirituous liquor.* The testimony was, that the defendant *sold, in combination, a pint of alcohol,* — but there is no evidence that the alcohol was *domestic distilled spirituous liquor.* There are three kinds of alcohol, — domestic distilled, foreign distilled, and alcohol made without distillation, by precipitating the acids from wine or cider, and extracting the aqueous part.

The state should have proved, as they have alleged, that the alcohol sold was domestic distilled. It may have been foreign distilled. It may have been alcohol without distillation.

The article may have been domestic distilled, but, two chances in three, it was not. Roscoe's Cr. Ev. 93 ; 3 Stark. Ev. 1530.

The omission to prove that the article sold was domestic distilled, was fatal, and the court ought to have so charged the jury ; but having charged the jury that the evidence was sufficient, there was error in the charge.

*R. Tyler*, state's attorney, in regard to the first exception, contended that a single act of selling spirituous liquors was to " deal in the selling" within the meaning of the 23d sec., chap. 83, of the Revised Statutes, on which the indictment

*Margin note:*
WINDHAM,
*February,*
1843.

State
*v.*
Chandler &
Keyes.

WINDHAM,
February,
1843.

State
v.
Chandler &
Keyes.

was founded; because, 1. The first section of the act forbids
each and every act of selling, in broad and unqualified terms,
and the legislature must have intended to impose the pen-
alty upon the act thus expressly prohibited; 2. Because the
23d section imposes the penalty for "each offence," which,
unless it means each act of selling, can have no definite
meaning; and 3. Because the 26th section provides that seve-
ral distinct offences of the same kind may be joined in one
indictment, which evidently contemplates that a single act
may constitute the offence of "dealing in the sale."

He further contended, in reference to the 2nd and 4th
exceptions, that the law contains no provision relative to the
*condition* or *intended use* of the liquor, excepting only, that
it must not be drunk on the premises of the vendor, and that
apothecaries may use it in the compounding of medicines.

In reference to the 3d and 5th exceptions, he maintained
that the 28th section of the statute restricted the liberty of
apothecaries to the compounding and sale for the use of
human beings, as the word "only," in that section, evidently
qualifies "persons"—not "sick or diseased," because, *with-
out* it, no one would ever think of selling *medicines* to be
administered to any other than the "sick or diseased," and
therefore, it would be practically absurd unless used to re-
strict the sale of the compound to the use of human beings
in distinction from brutes.


The opinion of the court was delivered by

HEBARD, J. — The question, in this case, is, had the
respondents a right to the charge requested? The court,
instead of charging as requested, told the jury that "if they
'believed the testimony, they should find the respondents
'guilty."

This charge has, at least, the merit of being short, and so
plainly stated that the jury could not misunderstand it; and,
if correct, its brevity is a defect that may easily be excused.
The obvious exposition of the charge is, that the jury were
told that, although all the points raised by the respondent's
request were found to be proved, it would avail them noth-
ing, the law being otherwise,—provided the main facts were
proved by testimony which they believed. And it was as
well, for the purpose of guiding the jury, as if the court had

WINDHAM,
*February*,
1843.

State
*v.*
Chandler &
Keyes.

enumerated the several points, and given the law, in detail, as applicable to each.

The first point made by the respondents in their request to the court is, perhaps, the one of the most importance, and the one that has been mainly relied upon in argument. But we are not disposed to put that construction upon the statute which they have contended for.

Section first of chapter 83 of the Revised Statutes makes it unlawful for any person " to sell any *spirituous liquors* " in a less quantity than 20 gallons, without a license. The 14th section of the same chapter provides, that " any person who ' shall *deal in the selling* of foreign or domestic distilled spirit- ' uous liquors, in a less quantity than 20 gallons at one time, ' shall be deemed to be a retailer within the meaning of this ' chapter." The chapter is entitled " of licenses to retailers, ' inn-keepers, and victualling-houses." The first section of the chapter defines the act that is unlawful, if done without a license;—and that is, " to sell any foreign or domestic dis- ' tilled spirituous liquors." This being the act that is forbidden to be done, of course for the doing of this the penalty is incurred. It is not any succession of acts, of a similar character, that constitutes the offence. The 14th section defines who are retailers ; and by " dealing in the selling," the same is meant as in the first section, by the expression *" to sell."*

But there is another view of the case, still more decisive. The 26th section of the same chapter provides, that " if any ' person shall be guilty of more than one *distinct offence* ' prohibited in either of the three preceding sections, he may ' be prosecuted and subjected to the penalties for all such ' *distinct offences,* at the same time." There would be a difficulty in understanding when a *distinct offence* had been committed, or how many had been committed, if it required any *number,* or succession of acts of selling, to constitute a *distinct offence.* The result, therefore, must be, that the offence is manifest by the proof of a single act of selling.

The next three points in the respondent's request to the court to charge the jury, relate, substantially, to the same thing, and may all be disposed of together.

The purpose for which the liquor is bought, or what may be the intention of the buyer, is not taken into the account by the statute in defining the offence ; nor are we to suppose

WINDHAM,
February,
1843.

State
v.
Chandler &
Keyes.

that the legislature intended to discriminate in relation to the ultimate destination of the article. The offence does not consist in buying, but in selling; of course, the *motive* and *intention* of the *buyer*, when regulating the policy of the law, as to the *seller*, was not regarded. The same remarks may apply to the condition of the liquor when bought. If it makes no difference for what purpose it was bought, it can make no difference whether the liquor was in a condition that it could have been drunk.

The remaining point for consideration is the exception in the statute in relation to apothecaries. It is not necessary here to determine what should have been the ruling of the court upon this point, provided the respondents had shown themselves to be *apothecaries*. It is enough for this purpose to say that the case does not show the respondents to have been apothecaries, in the sense in which the term is used in the statute. The mere keeping, and retailing, some of the articles which an apothecary may sometimes have occasion to use, does not, necessarily, constitute an apothecary within the meaning of the statute. It is, then, obviously used in a *professional sense*, combining, with the other parts of his business and occupation, that of *skill* and *judgment* in the preparation of his medicines. It is apparent, from the whole case, that the respondents were apothecaries in no sense, only that they, as is usual for most merchants, kept some of the articles which helped make up the list of medicinal commodities. But the exception in the statute is confined to the "preparation of medicines, to be administered to sick or diseased persons only."

There is a point made here by the counsel for the respondents, which is not presented by the bill of exceptions, in relation to a supposed variance between the proof and the indictment. How far there was a *variance*, or whether, in fact, there was any, does not appear. No exception was taken on that ground; nor was the attention of the court called to that subject. And we, now, sitting as a court of errors, can only look into so much of the case as is presented to us by the record. The only charge of the court which has been shown to us, was in relation to those particular requests of the respondents. The record purports to recite so much of the testimony as related to those points; and we

are bound to presume that, if there had been any defect in the proof, the attention of the court would have been called to it. But as the case does not pretend to detail *all* the testimony, we could not, with propriety, make the desired examination, to see whether the proof met, and sustained, the allegations in the indictment.

Judgment that the exceptions be overruled, and that judgment be rendered upon the verdict for the penalty of the statute.